UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THANG D. HUYNH, ) | Case No. CV 09-5772-JEM |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION AND ORDER |
| v. ) | REVERSING DECISION OF |
| ) | COMMISSIONER AND REMANDING FOR |
| MICHAEL J. ASTRUE, ) | FURTHER PROCEEDINGS |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**PROCEEDINGS**

On August 12, 2009, Thang D. Huynh ("Plaintiff" or "Claimant") filed a complaint

seeking review of the decision by the Commissioner of Social Security ("Commissioner")

denying Plaintiff's application for Supplemental Security Income ("SSI") disability benefits.

The Commissioner filed an Answer on January 12, 2010.  On April 29, 2010, the parties

filed a Joint Stipulation ("JS").  The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this

Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record

("AR"), the Court concludes that the Commissioner's decision should be reversed and

remanded for further proceedings in accordance with law and with this Memorandum

Opinion and Order.

**BACKGROUND**

Plaintiff is a 49 year old male who was determined to have the medically determinable severe physical impairments of non-insulin diabetes mellitus with peripheral neuropathy, hypertension, and obesity. (AR 15.) He has not engaged in substantial gainful activity since March 7, 2007, the filing date of his current SSI application. (AR 15.)

Plaintiff's claim was denied initially and on reconsideration. (AR 13.) He filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") James D. Goodman on November 20, 2008. (AR 13.) Claimant appeared and testified through a Vietnamese interpreter. Claimant was represented by counsel.

The ALJ issued an unfavorable decision on February 25, 2009. (AR 13-20.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[1] to perform his prior work as a fish cleaner and self-employed salvager, and thus was not disabled within the meaning of the Social Security Act. (AR 19.) The Claimant appealed this decision and, on June 25, 2009, the Appeals Council denied review. (AR 1-4.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff is raising as grounds for reversal and remand are as follows:

1. Whether the ALJ properly found that Claimant did not suffer from a severe mental impairment.

2. Whether the ALJ properly determined that Claimant could perform his past relevant work.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).

---

[1] Residual functional capacity is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Substantial evidence means "'more than a mere scintilla' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citations omitted). This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). The ALJ has the responsibility "to determine credibility, resolve conflicts in medical testimony and resolve ambiguities," but the ALJ's findings must be supported by "specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998.) A reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence. Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

The ALJ's step two determination that Plaintiff's mental impairment is not severe is unsupported by substantial evidence and must be reversed. The ALJ also improperly rejected the treating psychiatrists' opinions and evidence of Plaintiff's mental limitations. The ALJ's RFC and step four determination that Plaintiff can perform his prior relevant work must be reversed because they do not contain any mental limitations.

### A. The Sequential Evaluation

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The

Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to a listed impairment, in Appendix I of the regulations.  Id.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.     The ALJ's Step Two Determination**

At step two of the five step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments.  Bowen, 482 U.S. at 140-141.  An impairment is not severe if it does not significantly limit the claimant's ability to work.  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The ALJ, however, must consider the combined effect of all the claimant's impairments on his ability to function,

regardless of whether each alone was sufficiently severe.  Id.  Also, the ALJ must consider the claimant's subjective symptoms in determining severity.  Id.

The step two inquiry is a de minimis screening device to dispose of groundless claims.  Bowen, 482 U.S. at 153-154.  An impairment or combination of impairments can be found nonsevere only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  Smolen, 80 F.3d at 1290; Social Security Ruling ("SSR") 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

In this case, the ALJ determined at step two of the sequential process that Plaintiff's depressive disorder, NOS, was not severe.

### C.    Evidence Regarding Plaintiff's Physical and Mental Impairments

Plaintiff is a refugee immigrant from Vietnam who speaks only limited English.  (AR 30.)  He had but a fifth grade education in Vietnam.  (AR 30.)  His father was killed in 1969 by the Vietnamese military and his mother died of lung disease.  (AR 281.)  He fled Vietnam in 1980, stayed in a refugee camp in Thailand for a year, and came to the United States in 1981.  (AR 281.)  He first married in 1991 but his wife died.  (AR 281.)  He married again in 2003 but is now divorced.  (AR 281.)  He had a son but has no contact with him.  (AR 281.)  He has a sister with an unspecified mental illness.  (AR 250, 281.)

Plaintiff seeks SSI benefits for both physical and mental impairments.  With regard to physical impairments, his treating physician Dr. Vinh Xuan Nguyen, M.D., of Fairview Medical Clinic provided three reports dated April 14, 2003, November 29, 2005, and April 20, 2007 (AR 16), as well as progress notes.  (AR 270-71, 273-75, 277-78.)  These medical records indicate that Plaintiff received care for diabetes mellitus Type 2, arterial hypertension, and overweight/joint pain.  Treatment has included Atenolol, Verapamil and Norvase for hypertension; Glypizide, Metformin and Furosemide for diabetes; Allopurinol for gout; Glimepride for numbness; Gemfibrozil and Niacin for high cholesterol; and Piroxicam, Ibuprofen and Aspirin for pain.  (AR 44-50, 110, 142, 152, 257, 268, 272.)  Claimant also

was referred to consulting examiner Dr. Sean To for an independent internal medicine evaluation.  (AR 214-19.)  Dr. To indicated that Plaintiff's diabetes is not very well controlled, resulting in fatigue, blurry vision and numbness in the toes.  (AR 214-15, 217.)  There is evidence of peripheral neuropathy.  (AR 217.)  Dr. To recommended that Claimant should avoid driving due to the diabetes.  (AR 219.)  Notwithstanding these physical impairments, Dr. To's assessed RFC gives limitations that indicate that the Claimant is capable of performing medium work.  (AR 17.)  State agency reviewing physicians concluded that Plaintiff could perform the full range of medium work.  (AR 17.)  Plaintiff does not challenge here the ALJ's evaluation of his physical impairments.

With regard to mental impairments, Claimant received psychiatric care at Arcadia Mental Health Center ("Arcadia") from November 3, 2005, to October 12, 2006, and again since April 11, 2007.  (AR 17, 237-55, 279-334.)  During his initial visits, he reported thinking of suicide, difficulty in sleeping, hearing voices, seeing dead people, and feeling hopeless and helpless.  (AR 239.)  He was diagnosed with major depression with psychotic features (Code 296.33) and assessed a Global Assessment of Functioning ("GAF") score of 40.[2] (AR 239.)  He was prescribed the medication Luvox.  (AR 239.)  The Arcadia treatment records are extensive (AR 237-55, 279-334) and Claimant was seen by several Arcadia psychiatrists who all were in agreement with the major depression diagnosis.

One of his treating psychiatrists, Dr. Chin Choo, prepared a report dated February 1, 2008, reconfirming the initial Arcadia diagnosis.  (AR 279-87.)  He reports a long history of worsening depression, nightmares, paranoia and occasional suicidal ideation.  (AR 280.)  His history includes repeated episodes of decompensation with periods of symptom exacerbation and a loss of adaptive functioning in the areas of daily activities, social functioning, concentration, and task completion.  (AR 280.)  He assessed Claimant as

---

[2]  A GAF score between 41 and 50 may denote serious symptoms or a serious impairment in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (4th ed. 1994) (revised 2002) at 34.

having marked impairment in daily activities, with little significant improvement expected. (AR 283, 285.) Dr. Choo's diagnosis was major depressive disorder, recurrent, severe, with psychotic features (Code 296.34). (AR 283, 285.) Treatment has included Cymbalta and Risperdal for psychosis. (AR 48-49.) These medications have machinery and driving warnings. (AR 49.)

In stark contrast to the Arcadia psychiatric evidence is the July 17, 2007, complete psychiatric evaluation of consulting examiner Dr. Jason Yang. (AR 220-23.) Claimant informed Dr. Yang of his history of mental and emotional problems, including memory loss, nightmares, insomnia, depression, and stress. (AR 220.) Claimant also informed him that he had been seeing Dr. Choo and was on Cymbalta. (AR 220-21.) According to Dr. Yang, Claimant presented no obsessions or delusions. According to Dr. Yang, he denied having "any suicidal or homicidal ideation." (AR 222.) He denied any hallucinations. (AR 333.) Dr. Yang diagnosed Plaintiff with depressive disorder NOS and a GAF of 65. (AR 222.) Dr. Yang states, "The mental status examination today revealed no evidence of cognitive deficits, perceptual disturbances or delusional disorders at this time." (AR 223.) Dr. Yang's source of information was Claimant. (AR 220.) There were no medical or psychiatric records available for review. (AR 221.)

Two reviewing State psychiatrists provided reports on September 27, 2007 (AR 194-206) and November 28, 2007 (AR 210-11), assessing Plaintiff with depressive disorder, NOS, nonsevere. These reports were subsequent to Dr. Yang's report and one makes reference to it (AR 206), but there is no indication that they reviewed the Arcadia psychiatric records. They certainly did not see Dr. Choo's February 1, 2008, report.

At the November 20, 2008, hearing, the ALJ did not question Plaintiff about his alleged mental impairments. Plaintiff's counsel did, and Plaintiff testified that he has nightmares, hears voices, has suicidal thoughts, and sees people in his dreams who want to kill him, which scares him. (AR 50-51.) The ALJ again did not question him. Plaintiff's counsel expressed surprise that the Arcadia medical records, which had been sent on

February 29, 2008, had been added to the record "only recently." (AR 52.) Plaintiff's counsel stressed the importance of Dr. Choo's February 5, 2008, report but the ALJ responded, "I'm going to take the matter under advisement. If I need further development I'll notify you because I find that to be a new untested impairment at this point in time." (AR 53.)

The ALJ accepted the findings of Dr. Yang and the State reviewing psychiatrists, and rejected the report of Dr. Choo. (AR 15-19.) He accepted Dr. Yang's diagnosis of depressive disorder, NOS, and the reviewing psychiatrists' assessment of this impairment as nonsevere. (AR 15, 17.) The ALJ concluded that Plaintiff has "no mental limitations" (AR 18) that would interfere with his performance of gainful activity. (AR 19.)

### D.    The ALJ Improperly Evaluated Plaintiff's Mental Impairment

The ALJ's step two determination that Plaintiff's mental impairment is nonsevere is not supported by substantial evidence. The ALJ also improperly rejected extensive psychiatric evidence from the Arcadia treating psychiatrists in favor of nontreating examining and nonexamining reviewing psychiatrists whose opinions were tendered without reviewing the extensive Arcadia psychiatric evidence, including Dr. Choo's report.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Treating physicians are entitled to "special weight," Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988), indeed the "greatest weight." Orn, 495 F.3d at 632. Greater weight is given treating physician opinions than other physicians' opinions because treating physicians are "employed to cure and thus have the greatest opportunity to know and observe the patient . . ." Smolen, 80 F.3d at 1285; see also Orn, 495 F.3d at 633 (treating relationship provides a "unique perspective"). The ALJ may not reject a treating physician's

1  opinion, even if contradicted, unless he or she makes findings setting forth specific,

2  legitimate reasons for doing so that are based on substantial evidence. Smolen, 80 F.3d at

3  1285.

4          Where a treating physician's opinion is contradicted by an examining professional's

5  opinion, the Commissioner may resolve the conflict by relying on the examining physician's

6  opinion if the examining physician's opinion is supported by different, independent clinical

7  findings or other evidence in the record. See Andrews v. Shalala, 53 F.3d 1035, 1041-42

8  (9th Cir. 1995); Orn, 495 F.3d at 632 (ALJ may reject opinion of treating physician in favor of

9  examining physician whose opinion rests on independent clinical findings). Lastly, "[t]he

10 opinion of a non-examining physician cannot by itself constitute substantial evidence that

11 justifies the rejection of the opinion of either an examining physician or a treating physician";

12 but such an opinion may serve as substantial evidence when it is consistent with and

13 supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan,

14 169 F.3d at 600.

15         Thus, based on these principles, the nonexamining reviewing State psychiatrists'

16 opinions here can constitute substantial evidence on the basis of Dr. Yang's report. These

17 opinions are of limited value in any event because they merely mirror Dr. Yang's diagnosis

18 and are uninformed by the extensive Arcadia psychiatric evidence.

19         Much, then, turns on Dr. Yang's four page report. (AR 220-23.) To begin, the ALJ

20 overstates Dr. Yang's diagnosis in saying, "Dr. Yang opined that the claimant did not have

21 any major mental limitations." (AR 17.) Dr. Yang did not make such a statement or give

22 that opinion. Aware that Claimant had been receiving psychiatric care and was taking

23 Cymbalta, Dr. Yang carefully limited his opinion: "The mental status examination today

24 revealed no evidence of cognitive deficits, perceptual disturbances or delusional disorders

25 at this time." (AR 223 (emphasis added).) Dr. Yang did not reject the history of mental

26 problems related to him by Claimant. The ALJ, however, used Dr. Yang's one point in time

27 assessment of Plaintiff's symptoms on the day of his visit to reject years of contrary Arcadia

28

1    psychiatric evidence of more serious mental illness.  Dr. Yang's opinion does not consider

2    or address that evidence or the period of time it covers.

3         Dr. Yang, moreover, did not request the Arcadia medical records, even though he

4    was aware Claimant was being seen by a psychiatrist and was on medication.  Nor did the

5    State reviewing psychiatrists seek the Arcadia records, although they also knew of Plaintiff's

6    prior psychiatric treatment from Dr. Yang's report, which they cite.  Despite the apparent

7    conflict between the Arcadia evidence and Dr. Yang's opinion, the ALJ did not provide the

8    Arcadia records to Dr. Yang or to the State agency reviewing psychiatrists for their review.

9    The ALJ's failure to do so substantially lessens the probative value of the opinions of

10   Dr. Yang and the State reviewers as a basis for rejecting the Arcadia psychiatric evidence

11   as to the periods of time covered by it.  The Court has serious doubts whether Dr. Yang and

12   the State reviewers would have offered the same assessment of Plaintiff had they seen the

13   extensive Arcadia medical records.

14        The ALJ also gave unreasonably short shrift to the Arcadia evidence, focusing only

15   on Dr. Choo's February 1, 2008, report.  There are extensive progress notes, including from

16   other treating psychiatrists than Dr. Choo who concurred in his diagnosis.  The ALJ did not

17   address the extensive psychiatric evidence in the treatment notes, nor acknowledge the

18   other treating psychiatrists at Arcadia.  The ALJ also asserts that there is no longitudinal

19   history of mental complaints and/or mental health treatment.  (AR 18.)  Yet there are four

20   years of progress notes in the Arcadia psychiatric evidence, all of it consistent as to

21   Plaintiff's specific mental health complaints and treatment.  Dr. Yang's opinion does not

22   purport to reject it nor address the time period it covers, and cannot be used to do so.

23        Dr. Choo's report relates "repeated episodes of decompensation with periods of

24   symptom exacerbation and a loss of adoptive functioning."  (AR 280 (emphasis added).)

25   This clinical evidence is consistent with fluctuating symptoms.  The ALJ's determination that

26   Plaintiff did not meet the special paragraph B criteria for a severe mental impairment was

27   based on the State reviewing psychiatrist's finding that Claimant has experienced no

28   episodes of decompensation which have been of extended duration.  (AR 16, 202.)  This

finding, however, was made without awareness of Dr. Choo's evidence of decompensation episodes which is uncontradicted.  Episodes of decompensation are more than "a slight abnormality" and require reversal without more of the ALJ's step two nonseverity determination.  That conclusion is unsupported by substantial evidence and contrary to law.

The ALJ also asserts that there are inconsistencies in the Claimant's recitation of symptoms to Dr. Yang and Dr. Choo.  (AR 18.)  To Dr. Choo and other psychiatrists at Arcadia, Plaintiff repeatedly reported suicidal ideation, voices, and hallucinations.  (AR 18-19.)  He denied these symptoms were present or active at the time he visited Dr. Yang but he clearly was not denying they ever had occurred.  Quite the contrary, Plaintiff told Dr. Yang of his history of mental illness and his symptoms.  (AR 220.)  As already noted, Dr. Yang was careful to say that Plaintiff did not present those symptoms "today" and "at this time."  Dr. Yang did not deny that they occurred on other occasions.  There is considerable evidence of suicidal ideation over one and a half years in the Arcadia psychiatric evidence that the ALJ does not address.  (AR 239, 249, 250, 255, 296, 301.)  The ALJ never looked for an explanation of the apparent inconsistency between Dr. Yang's and Dr. Choo's assessments; instead, he adopted Dr. Yang's assessment and then, assuming a direct conflict with Dr. Choo's report, rejected considerable other evidence that Dr. Yang's limited opinion plainly does not encompass.  Thus, the supposed inconsistency is not a legitimate basis for rejecting the opinions of Dr. Choo and the other treating psychiatrists at Arcadia, or to reject Plaintiff's credibility.  Additionally, the ALJ seems to dismiss Claimant's mental impairment by referring to it in quotation marks as "mental problems" (AR 13) or "symptoms" (AR 17), as if they are feigned.  No physician suggested that Claimant was lying.  Given his personal history, some level of depression, paranoia and suicidal ideation hardly would surprise.  (AR 283.)

The ALJ also rejects Dr. Choo's diagnosis because of "a paucity of objective findings reported by Dr. Choo." (AR 18.)  This finding is contrary to law and contrary to the evidence.  Psychiatric impairments are not as amenable to substantiation by objective laboratory testing as are physical impairments. Hartman v. Bowen, 636 F. Supp. 129, 131-

32 (N.D. Cal. 1986).  The diagnostic techniques necessarily will be less tangible.  Lebus v. Harris, 526 F. Supp. 56, 60 (N.D. Cal. 1981).  Mental disorders cannot be "ascertained and verified" like physical ailments.  Hartman, 636 F. Supp. at 132.  Thus, in the case of mental illness, clinical and laboratory data may consist of "the diagnoses and observations of professional psychiatrists and psychologists."  Id.  Additionally, the Ninth Circuit requires that the Commissioner must give proper weight to the subjective elements of a physician's opinion.  Embrey, 849 F.2d at 422.

There is in any event extensive clinical, observational evidence in the Arcadia progress notes, including GAF scores, that the ALJ never addresses or mentions.  Ironically, Dr. Yang's report is based solely on Claimant's statements.

The ALJ also discounts Dr. Choo's diagnosis because of conservative and infrequent treatment and no psychiatric hospitalization.  (AR 18-19.)  Plaintiff, however, is a refugee immigrant with a fifth grade education who speaks little English and has limited financial means.  He is after all mentally ill, even according to Dr. Yang, the State psychiatrists, and the ALJ.  These factors lessen the weight to be given Plaintiff's periodic Arcadia visits.  The fact that he could be far worse does not mean that his mental impairment is not severe.  Episodes of decompensation say otherwise.

The ALJ, then, improperly rejected the treating Arcadia psychiatrists' opinions.  The ALJ did not provide specific and legitimate reasons supported by substantial evidence to justify doing so.  The opinions of the Arcadia treating psychiatrists must be given greater weight in assessing Plaintiff's limitations than those of Dr. Yang and the State reviewers.  Carmickle v. Comm'r, Soc. Sec. Adm., 533 F.3d 1155, 1164 (9th Cir. 2008) (physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationship).

### E.   Disposition

The ALJ's step two determination that Plaintiff's mental impairment is not severe is reversed.  The ALJ's RFC and step four determination that Plaintiff can perform his prior relevant work also must be reversed because they do not contain any mental limitations.

1   Additionally, on remand the Commissioner should consider the limitations on driving

2   due to Plaintiff's diabetes and psychiatric medications.  (AR 49, 219.)  The State reviewer

3   also indicated that Plaintiff could not sit or stand for six hours due to his physical ailments.

4   (AR 206.)  The Court is not clear whether Plaintiff's prior recycling work was substantial

5   gainful employment or a recognized job classification as it was performed.  There was no

6   vocational evidence presented at the November 20, 2008, hearing.

7                                        **ORDER**

8       IT IS HEREBY ORDERED that the Decision of the Commissioner of Social Security

9   is reversed and remanded for further proceedings in accordance with law and with this

10  Memorandum Opinion and Order.

11      LET JUDGMENT BE ENTERED ACCORDINGLY.

12

13  DATED: September 20, 2010                    */s/ John E. McDermott*

14                                        JOHN E. MCDERMOTT
                                          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28